IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON M. RIGGS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

Case No. 3:13-cv-01913-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

    Plaintiff brings this action pursuant to the Social Security Act (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) benefits under the Act. The Commissioner's decision is affirmed and this case is dismissed.

### DISCUSSION

    Plaintiff asserts that the Commissioner's decision should be reversed and remanded for the payment of benefits. Plaintiff

1 - OPINION AND ORDER

argues that the Administrative Law Judge (ALJ) erred by failing to give: 1) adequate consideration to the opinion of her treating doctor; 2) clear and convincing reasons for rejecting her testimony; and 3) sufficient weight to lay evidence. Pl.'s Br. 12. Plaintiff also argues that the Commissioner did not meet her burden of proving that she retains the ability to perform "other work" in the national economy. Id.

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing plaintiff's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

I. Weight Given to the Opinion of Plaintiff's Doctor

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for choosing the opinions of the consultative examiner and the non-examining psychologists over the opinion of

her treating doctor, Dr. Hallenburg. Pl.'s Br. 16.

The ALJ gave little weight to Dr. Hallenburg's opinion because it was a "one-time snapshot" of plaintiff's functioning that relied on plaintiff's self-reporting, which he found "less than credible." Tr. 19. Specifically, the ALJ noted that plaintiff told Dr. Hallenburg that she had been clean and sober since April 2009, despite admitting to using drugs and alcohol as recently as 2012 during the hearing. Id. The ALJ also noted that plaintiff complained to Dr. Hallenburg about hearing voices, but denied such symptom testimony to other medical sources. Id.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a claimant's treating physician is entitled to "special weight" because she "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989)(citation omitted). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 830-31; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). However, If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that

3 - OPINION AND ORDER

are supported by substantial evidence. Barnhart, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830-31). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Additionally, "[a]n opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d at 1043; see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation, unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's opinion). Further, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999). Finally, an ALJ need not accept a medical opinion that fails to take into account a claimant's drug or alcohol use. See Morgan, 169 F.3d at 602-03.

At the outset, this court notes that contrary to plaintiff's assertions, the evidence reveals that Dr. Hallenburg, Ph.D., was a consultative examiner and not plaintiff's treating doctor. Tr. 76,

4 - OPINION AND ORDER

276-81. Further, Dr. Hallenburg's opinion was contradicted by the opinions of consultative examiner Dr. Dieter, M.D., and reviewing Drs. Kennemer, Psy.D., and Rethinger, Ph.D.. Tr. 84-85, 102-03, 268. Thus, the specific and legitimate standard applies here.

Dr. Hallenburg completed a consultative psychological examination of plaintiff in August 2012 that included the review of one psychological evaluation of plaintiff from 2009, intellectual functioning tests, and plaintiff's self-reported symptoms, which included claims that she has "been clean and sober since April 17, 2009" and that she began "hearing voices" and "seeing things that are not there" when she was eight. Tr. 14, 276-81. Dr. Hallenburg diagnosed plaintiff with PTSD, OCD, polysubstance abuse in sustained full remission, and psychosis and bipolar disorders. Tr. 281. Dr. Hellenburg concluded that despite being on medications and being clean and sober for four years, plaintiff's health symptoms had increased and significantly interfere with her ability to focus, organize, and interact personally with others on the job, rendering her unable to maintain employment at this time. Id.

In contrast to the statements plaintiff made to Dr. Hallenburg, she admitted to relapsing "about a year ago" at the administrative hearing. Tr. 45. The record also reveals that after being admitted to the hospital on March 31, 2011, plaintiff tested positive for THC in a urine drug test, told doctors that she used alcohol and marijuana "a couple weeks ago," and denied

5 - OPINION AND ORDER

experiencing auditory and visual hallucinations. Tr. 362-63.

In addition to the contradicting statements plaintiff made to doctors and the ALJ regarding drug use and hallucinations, three doctors gave opinions that contradicted Dr. Hellenburg's assessment of plaintiff. Notably, in October 2010, consultative examiner, Dr. Dieter, M.D., opined that plaintiff's "problems are likely treatable with some likelihood of recovery and improvement," her "ability to interact with coworkers, supervisors, and the public as well as tolerate stress in the work environment is not particularly limited," and "it is likely [she] would be able to do simple and repetitive tasks." Tr. 268. Dr. Dieter's opinion of plaintiff was made after reviewing two years of progress notes from her primary care provider and after plaintiff admitted to "relaps[ing] with alcohol and marijuana six months ago." Tr. 264. Similarly, in September and November of 2012, reviewing Drs. Kennemer, Psy.D., and Rethinger, Ph.D., opined that plaintiff was capable of completing simple, routine, and repetitive tasks with limited contact of others. Tr. 84-85, 102-03, 268.

Here, the record reveals that Dr. Hallenburg's opinion was based largely on plaintiff's subjective complaints, which the ALJ found not credible, as well as on a conclusion that plaintiff's polysubstance abuse was in sustained full remission, an opinion that was created with inaccurate information regarding plaintiff's drug use, which the ALJ pointed to in the record. Moreover, three

6 - OPINION AND ORDER

doctor's opinions contradicted Dr. Hallenberg's opinion, including Dr. Dieter's opinion, which was made with a better longitudinal picture of plaintiff's medical history and a more accurate synopsis of her drug use.

Because the ALJ pointed to specific and legitimate evidence in the record of Dr. Hallenburg's opinion being contradicted by other doctor's opinions and reliant on plaintiff's subjective complaints, which he found not credible, this court finds that the ALJ did not err in rejecting Dr. Hallenburg's opinion.

II. Weight Given to Plaintiff's Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting her testimony and, therefore, her complaints and testimony should be accepted as true, rendering her disabled under the Act. Pl.'s Br. 2.

As stated above, the ALJ found plaintiff's complaints less than credible. Specifically, the ALJ noted that plaintiff 1) was noncompliant with her medications at times; 2) gave misleading information to examiners about her last usage; 3) gave inconsistent symptom testimony from one provider to the next; 4) engaged in activities inconsistent with her reported limitations; and 4) declined mental health services when offered. Tr. 18-19.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of

7 - OPINION AND ORDER

malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. The ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying and prior inconsistent statements concerning the alleged symptoms. Id. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. Id. Daily activities may serve as a basis for discrediting a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating

8 - OPINION AND ORDER

impairment." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112-13 (9th Cir. 2012). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, the record reveals that plaintiff admitted discontinuing use of her medications because she felt "like she would be better off without [them]," but eventually resumed taking them after her symptoms "got a lot worse." Tr. 203. Also, as stated above, plaintiff provided inconsistent statements to doctors and the ALJ regarding her drug and alcohol use and auditory and visual hallucinations.

Additionally, the ALJ resolved that plaintiff's credibility was impaired by her activities of daily living. The record reveals that at the administrative hearing, plaintiff stated that she has "a really hard time being around people [and] being in public," it has "been years since [she has] gone grocery shopping by [herself]," and sometimes while grocery shopping, she has to leave because she gets "very nervous" and feels "claustrophobic or unsafe." Tr. 39-40, 50. Plaintiff also stated that she doesn't have any friends and the only two places she goes are to her mother's or sister's houses. Tr. 49. Further, plaintiff claimed that while at her mother's or sister's house, "depending on how she feels emotionally," she will help with household chores, but on

9 - OPINION AND ORDER

some days, she has a really difficult time and sleeps all day. Id.

Contrary to the assertions plaintiff made at the administrative hearing, plaintiff's mother, Debra Mcnatt, stated that she "has an 'I don't care' and an 'I'm not afraid of nothing' attitude." Tr. 185. Further, Ms. Mcnatt stated that plaintiff was able to help with household chores, such as laundry, sweeping, and mopping, prepare meals daily, go outside several times per day, walk, ride in a car and on a bicycle, use public transportation, go out in public alone, and shop in stores for groceries and clothes. Tr. 181-82. Ms. Mcnatt also noted that plaintiff "hangs out with family, friends, and [at] the Eugene Mission" and stated that on a daily basis, plaintiff watches television, reads books, talks to people on the phone, and plays games on the computer. Tr. 179, 183.

The record also reveals that plaintiff has repeatedly declined mental health services when offered. Plaintiff most recently declined mental health services following a suicide attempt on November 23, 2012, where she arrived at the hospital with a blood alcohol level of 0.15 and a urine toxicology screen that tested positive for methamphetamine and THC. Tr. 295, 297, 298. Plaintiff's medical charts reveal that after being released from the intensive care unit, she was transferred to the psychiatric ward of the hospital where she "was somewhat isolative to her room, not really engaged much in therapy, [and] by her second day . . .

was stating that she wanted to leave." 291, 296, 310. Plaintiff's medical charts also reveal that she told hospital doctors that "in the past she wanted to be psychiatrically hospitalized, but was not allowed to." Tr. 312. However, the medical charts go on to state that "this is in direct conflict with reports in the electronic medical records that basically state that each time she has had other self harmful attempt[s] or a suicide attempt she has recovered from the attempt [at] the emergency department and asked to be released home." Id.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

III. Weight Given to Lay Evidence

Plaintiff argues that the ALJ erred in his consideration of her mother and sister's testimony. Plaintiff further argues that her mother and sister's testimony is highly consistent with the opinion of Dr. Hallenburg and as such, should be credited as true.

The ALJ gave "only some weight" to plaintiff's family witnesses because they "failed to mention [plaintiff's] extensive history of substance addiction problems when discussing her long history of mental health problems" and "the activity level

11 - OPINION AND ORDER

described by [plaintiff] and these sources, such as the ability to perform household chores and complete other activities of daily living, seemed inconsistent with the degree of limitation they also endorsed." Tr. 19.

"Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ can reject the testimony of lay witnesses only by providing reasons germane to each witness. Smolen, 80 F.3d at 1288. Lay witness testimony may be disregarded on the same basis as claimant's discredited subjective reports. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). The ALJ may also reject lay witness testimony due to inconsistencies with the medical evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, plaintiff's sister, Christina Loomis, stated that Plaintiff "cannot function properly in social environments. Weird thoughts go through her head" and "because of all this, she cannot hold any job or be in public without one of us helping her work through it mentally." Tr. 228-29. Further, plaintiff's mother, Deborah Mcnatt, stated that plaintiff can focus for only ten to fifteen minutes and her ability to work is limited due to her inability to focus, from hearing voices in her head, and from bi-polar moods. Tr. 179, 184.

12 - OPINION AND ORDER

Although plaintiff's mother and sister assert that she is unable to work, the inconsistencies between plaintiff's activities of daily living and the degree of limitations endorsed by the lay witnesss, coupled with the fact that plaintiff's mother and sister failed to mention her extensive history of substance addiction problems when discussing her long history of mental health problems, erode the credibility of plaintiff's, her mother's, and her sister's statements. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). Further, it is immaterial whether the lay testimony was similar to the opinion of Dr. Hallenburg, because Dr. Hallenburg's opinion was properly discredited by the ALJ. As such, the ALJ's decision is upheld as to this issue.

IV. <u>Plaintiff's Ability to Perform Work in the National Economy</u>

Plaintiff contends that the ALJ based his decision on the opinion of the vocational expert (VE), which was based on an incomplete hypothetical that failed to accurately reflect her condition. Pl.'s Br. 19-20. This court disagrees.

Limitations supported by substantial evidence must be incorporated into the residual functional capacity and, by extension, the dispositive hypothetical question posed to the VE. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

13 - OPINION AND ORDER

As discussed above, the statements by plaintiff, her mother, sister, and Dr. Hallenburg were properly discredited by the ALJ. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to these issues, is without merit. Bayliss, 427 F.3d at 1217-18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper."). Accordingly, plaintiff's argument fails.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this ___2___ day of February 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

14 - OPINION AND ORDER